**Roger ZACZEK, Petitioner,**

v.

**D. HUTTO, Director of Adult Services, Virginia Dept./Corrections, W. D. Blankenship, Supt., Bland Correctional Center, Capt. Ellison, Correction Officer, Bland Correctional Cntr., J. L. Gorden, Correctional Officer, Bland Correctional Center, Respondents.**

Civ. A. No. 77–0402.

United States District Court,
W. D. Virginia,
Abingdon Division.

March 29, 1978.

Walton D. Morris, Jr., Bradshaw & Morris, Big Stone Gap, Va., for petitioner.

Alan Katz, Asst. Atty. Gen., Richmond, Va., for respondents.

## OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

Petitioner, appearing pro se, instituted this action while confined at Bland Correctional Center. He alleges that a regulation of the Virginia Department of Corrections violates his rights under the First and Fourteenth Amendments to the Constitution of the United States. This regulation restricts all publications, including books, from entering the correctional institution unless they come directly from the publisher or a legitimate bookstore.[1] Petitioner seeks declaratory, injunctive and compensatory relief. Jurisdiction exists pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

Based upon the pleadings, the court initially held this regulation unconstitutional and granted summary judgment for petitioner. A hearing was scheduled to resolve the question of damages, and an attorney was appointed to represent petitioner. Respondents then moved the court to reconsider its order. In consideration thereof, the court heard evidence and argument at the hearing on the constitutionality of the regulation and the amount of damages, if any. Pursuant to Rule 52(a), the court makes the following findings of fact and conclusions of law.

### Findings of Fact

On September 18, 1977, petitioner received a package from his mother. This package contained the book *Low Blood Sugar.* The correctional officer in charge of the package room told petitioner that he could not have the book because it was not sent from the publisher. Petitioner testified, however, that he had received other books directly from his mother without any problems.

Petitioner subsequently wrote Superintendent Blankenship and requested that he be given the book. He stated that he needed it for health reasons and for pending litigation in a suit filed against Blankenship and concerning petitioner's alleged low blood sugar condition. Respondent Blankenship responded by telling petitioner that under the publisher's-only rule, he could not receive the book. Blankenship further refused to exercise his discretion under the rule and grant petitioner an exception. Instead, he wrote the attorney appointed to assist inmates at Bland and asked him to discuss this matter with petitioner. Blankenship told the attorney he would allow petitioner to have the book if he determined

---

1. Department of Corrections Guideline 852, in pertinent part:

    A. Publications, including books, must come directly from the publisher, or from a legitimate bookstore. Regional and Major Superintendents may authorize exceptions to this rule.

that petitioner truly needed it. On October 10, the attorney answered Blankenship's letter and recommended that petitioner be given the book. Finally, on November 15, some time after the suit against Blankenship was dismissed, petitioner gained possession of *Low Blood Sugar*.

Respondent Blankenship testified at the hearing that if this book had come directly from a publisher, petitioner would have received it immediately. He further stated that the rationale of the rule was to simplify inspection of incoming publications because material from publishers was less likely to contain items such as weapons and drugs, and to prevent a great influx of materials thereby reducing sanitation problems and fire hazards.

### Conclusions of Law

██ Federal courts have traditionally been reluctant to become involved in the day-to-day functioning of state prisons. *See, Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Nevertheless, when a prison practice or rule impinges upon a fundamental constitutional guarantee, judicial restraint does not prevent federal courts from correcting the constitutional infirmity. *Johnson v. Avery*, 393 U.S. 483, 486, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

Following this rationale, the Supreme Court in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), held that prisoner mail could be censored only when it furthered internal order and discipline, institutional security, and rehabilitation. The Court enumerated specific criteria that must be met to justify censorship:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression . . . Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

*Id.* at 413, 94 S.Ct. at 1811.

It is within this framework that the court must decide if the rule in this case is constitutional. Respondents assert that the publisher's-only rule is necessary to maintain security and order. They contend that without the rule, an inordinate amount of publications would be sent into the prison, thus making it impossible to properly check them all for contraband. They further argue that the additional publications would clutter up the prison and increase health and fire hazards.

██ The court recognizes that the prison administration has a legitimate interest in inspecting incoming publications and in controlling the litter within the institution. But a rule that allows a particular book if it is sent from the publisher and disallows the same book if it comes from a friend or relative imposes a burden on the assertion of First Amendment rights that is greater than necessary to achieve the governmental interests. Furthermore, the rule works an extra hardship on the poorer inmates because it cuts off the supply of used books.

In reality, this rule allows censorship of reading material solely for administrative convenience. As recognized by the court in *Rhem v. Malcolm*, 371 F.Supp. 594 (S.D.N.Y.1974), in holding a similar publisher's-only rule unconstitutional, such a governmental interest cannot stand in the face of First Amendment freedoms:

> [T]he true reason for the rule is to promote economy and administrative convenience. Aside from the fact that the policy imposes a significant hardship on inmates, most of whom are poor, by requiring them to buy books and magazines which they could otherwise receive without cost from friends or relatives, the rationale of economy and administrative convenience is unsupportable, particularly where the "preferred" rights secured by the First Amendment are at stake.

*Id.* at 634.

In an unpublished decision, the Court of Appeals for the Fourth Circuit reached a contrary result and held that a publisher's-

only rule was constitutional. *Blevins v. Royster,* No. 11–129 (4th Cir. Sept. 17, 1968). However, that decision was before *Procunier.* Consequently, the court feels that *Blevins* is not persuasive authority in the instant action.

In this jurisdiction, the only court that has considered the publisher's-only rule in light of *Procunier* concluded that it was unconstitutional. *Burke v. Levi,* 391 F.Supp. 186 (E.D.Va.1975). While the court recognizes that *Burke* was vacated and remanded as moot in *Burke v. Levi,* 530 F.2d 967 (1975), the reasoning of the district court nevertheless remains valid and convincing.

Based on the foregoing analysis, the court concludes that the publisher's-only rule does not satisfy the requirements of *Procunier* and is therefore unconstitutional.

### Damages

■ In resolving the question of damages, the court must consider, first, whether respondents acted in good faith and second, whether they acted without malice. The Supreme Court recently held that state prison officials are entitled to immunity from damages liability under Section 1983 unless they "knew or reasonably should have known that the action" they took would violate a prisoner's constitutional rights or they "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury" to the prisoner. *Procunier v. Navarette,* —— U.S. ——, ——, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1978), *citing Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). In other words, respondents are not liable for any damages incurred by petitioner if they acted in good faith and without malice. Good faith is to be judged by considering factors such as the official's scope of discretion and responsibility, the circumstances as they appeared at the time of the action and the existence of reasonable grounds for believing the action was legal. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ At the time that respondents refused to give *Low Blood Sugar* to petitioner, the decisions in *Procunier* and *Burke* had been handed down. Even though *Burke* was vacated and remanded, and *Procunier* did not specifically deal with a publisher's-only rule, the court feels these cases should have placed respondents on notice that this rule was suspect and in all likelihood unconstitutional. *Procunier,* in particular, narrowed the instances in which censorship of prisoner mail is constitutional, and by so doing, erased any reasonable grounds that respondents might have believed justified their actions.

Furthermore, respondent Blankenship had discretion under the rule to make exceptions. Yet he refused to do so even though petitioner had a legitimate reason for wanting the book. If for no other reason, he should have exercised his discretion in this instance since the rule's constitutional validity had certainly come into question.

■ Therefore, the court finds that respondents did not act in good faith and consequently do not have any immunity. Thus, petitioner is entitled to recover compensatory damages. However, the evidence failed to show that he suffered any real detriment from the initial denial of the book. Nevertheless, his constitutional rights were violated and such cannot be ignored. Therefore, the court awards petitioner Ten Dollars ($10.00) nominal compensatory damages.

■ Finally, on the issue of punitive damages, such are not available if respondents acted without malice. *See Skinner v. Spellman,* 480 F.2d 539 (4th Cir. 1973). The court concludes from the evidence that respondents did not act with a malicious intent to deprive petitioner of his constitutional rights. Accordingly, petitioner is awarded no punitive damages.

In accordance with the foregoing opinion, it is hereby ordered that judgment be entered for petitioner and that he be awarded Ten Dollars ($10.00) damages and Seven Hundred Fifty Dollars ($750.00) attorney's fees. The case is ordered stricken from the

docket and the Clerk is directed to send certified copies of this Opinion and Order to counsel of record.